**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

**IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID. No.  1112016434 |
| | ) | |
| | ) | |
| JONATAN RODRIGUEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Submitted:  May 22, 2015
Decided: August 3, 2015

**COMMISSIONER'S REPORT AND RECOMMENDATION THAT
DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF
SHOULD BE DENIED
AND
COUNSELS' MOTION TO WITHDRAW SHOULD BE GRANTED.**

Josette D. Manning, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Patrick J. Collins, Esquire and Albert J. Roop, V, Esquire,  716 North Tatnall Street, Suite 300, Wilmington, Delaware, 19801, Attorneys for Defendant Jonatan Rodriguez.

PARKER, Commissioner

This 3rd day of August, 2015, upon consideration of Defendant's Motion for Postconviction Relief, it appears to the Court that:

## BACKGROUND AND PROCEDURAL HISTORY

1.    On December 23, 2011, Defendant Jonatan Rodriguez was arrested and charged with Murder by Abuse or Neglect First Degree. These charges stem from the death of two year old Brianna Pritchett, who died as a result of brain injury and abdominal bleeding after being in Defendant's care.

2.    On March 26, 2012, Defendant was indicted and charged with one count of Murder by Abuse or Neglect First Degree and one count of Endangering the Welfare of a Child. On September 24, 2012, Defendant was re-indicted and charged with Murder by Abuse or Neglect First Degree (stemming from the death of two year old Brianna Pritchett) and Assault by Abuse or Neglect (stemming from serious physical injuries to Brianna's sister nine-month-old Ta'Iona Turner).

3.    There were no plea negotiations in this case until after the pre-trial conference held on June 5, 2013. The trial was scheduled to begin on June 19, 2013.[1]

4.    On June 13, 2013, Defendant Rodriguez pled guilty to one count of Manslaughter (Lesser included Offense of Murder by Abuse or Neglect First Degree) and one count of Assault by Abuse or Neglect.[2] There was no sentencing agreement as part of the plea.[3]

5.    On September 6, 2013, following a pre-sentence investigation, Defendant was sentenced. Defendant was sentenced to 25 years of unsuspended Level V time for the Manslaughter charge, and 25 years of Level V time, suspended after 15 years, for the Assault charge, followed by probation.

---

[1] See, June 5, 2013 Transcript of Pre-trial Office Conference; June 13, 2013 Plea Transcript, at pgs. 3-4.
[2] June 13, 2013 Plea Agreement.
[3] *Id.*

1

6.      Defendant did not file a direct appeal to the Delaware Supreme Court.

7.      Thereafter, on October 3, 2013, Defendant filed a motion for modification/reduction of sentence.[4]  In that motion, Defendant claimed, *inter alia,* that his counsel was ineffective and he was misled as to his sentence.  By Order dated October 30, 2013, the Superior Court denied Defendant's motion finding it to be without merit.  The Superior Court held that the sentence was appropriate for all the reasons stated at the time of sentencing.[5]  The Superior Court further held that the numerous aggravating factors more than justified the lengthy sentence for the extremely violent nature of the charges and the vulnerability of the victims, particularly considering Defendant's total lack of sincere remorse.[6]

**FACTS**

8.      On December 18, 2011, police were dispatched to an apartment complex in Wilmington after receiving reports of an unresponsive two-year-old girl, Brianna Pritchett.  Brianna along with her two siblings, four-year-old Jabria and nine-month-old Ta'Iona, were in Defendant's care at the time of the incident. The children were the daughters of Defendant's girlfriend. Jabria informed police that Defendant had been hitting Brianna because she had diarrhea.[7]

9.      EMS transported Brianna to A.I. duPont Hospital, where a CAT scan and x-rays revealed several broken ribs and a lacerated liver.  On December 20, 2011, Brianna was

---

[4] Superior Court Docket No. 47.
[5] Superior Court Docket No. 48.
[6] Superior Court Docket No. 48.
[7] Affidavit of Probable Cause, Exhibit B, attached to Justice of Peace Court 20 Commitment, Superior Court Docket No. 1.

declared brain dead and removed from life support. Her death was caused by a brain injury and abdominal bleeding caused by blunt force trauma.[8]

10. On December 21, 2011, Ta'Iona's aunt took her to the hospital after noticing that she was having difficulty crawling and was not using her left arm properly. After examining her, doctors reported a "child offense" to police due to the nature of the injuries. X-rays revealed that Ta'Iona had sustained a liver laceration, acute fracture of her left humerus, acute fracture of her right tibia, acute fracture of her left ulna and radius and healing fracture in her right distal radius.[9]

11. Defendant pled guilty on June 13, 2013 to the charges of Manslaughter and Assault by Abuse/Neglect. During the plea colloquy, Defendant's counsel explained that Defendant had agreed to accept the plea given the likely result at trial and given the need to accept responsibility in order to receive a favorable sentence.[10]

12. At sentencing, the prosecutor discussed the severity of the injuries to Brianna and Ta'Iona. The prosecutor represented that Defendant's acceptance of responsibility was given "great weight" in the State's decision to extend a plea offer. Another consideration that factored into the State's decision to offer the plea was the reluctance to have four-year-old Jabria testify at trial.[11]

13. The prosecutor stated, however, that the Presentence Investigation revealed that Defendant did not have remorse nor did he accept responsibility. The State then asked

---

[8] Affidavit of Probable Cause, Exhibit B, attached to Justice of Peace Court 20 Commitment, Superior Court Docket No. 1.
[9] September 6, 2013 Sentencing Transcript, at pgs. 5-7; Memorandum in Support of Motion to Withdraw as Rule 61 Counsel, Superior Court Docket No. 66, at pgs. 4-5.
[10] June 13, 2013 Plea Colloquy, at pg. 3.
[11] September 6, 2013 Sentencing Transcript, at pgs. 10-12.

for 35 years of imprisonment because of Defendant's continued refusal to accept responsibility "for what he did to those little girls."[12]

14. At sentencing, defense counsel described the difficulties Defendant faced in childhood, including abuse by his step-mother and the untimely death of his mother from a drug overdose when Defendant was just an infant.[13] Defense counsel also noted that Defendant suffered the traumatic loss of his 19-year-old brother, who was murdered when Defendant was still a child. Trial counsel emphasized that Defendant demonstrated acceptance of responsibility by pleading guilty to counts which could lead up to 50 years of imprisonment.[14]

15. At sentencing, the Superior Court noted Defendant's 'horrific childhood", but also cited several aggravators including the vulnerability of the victims, child domestic violence victims, offenses against children, need for correctional treatment, custody status at the time of the offense and undue depreciation of the offense.[15]

**RULE 61 MOTION AND COUNSEL'S MOTION TO WITHDRAW**

16. On February 14, 2014, Defendant filed a *pro se* motion for postconviction relief. In Defendant Rodriguez's *pro se* motion, he claimed that counsel was ineffective by giving substandard advice and for failing to adequately advise the Defendant as to his right to trial and the nature and extent of the State's plea offer.

17. Defendant was thereafter assigned counsel. On December 30, 2014, assigned counsel filed a Motion to Withdraw as Postconviction Counsel pursuant to (pre-June

---

[12] September 6, 2013 Sentencing Transcript, at pg. 11-13.
[13] September 6, 2013 Sentencing Transcript, at pgs. 14-16.
[14] *Id.*
[15] September 6, 2013 Sentencing Transcript, at pgs. 16-18.

2014) Superior Court Criminal Rule 61(e)(2), (post-June 2014) Superior Court Criminal Rule 61(e)(6).[16]

18.   (Pre-June 2014) Superior Court Criminal Rule 61(e) (2), (post-June 2014) Rule 61(e) (6) provides that:

> If counsel considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other substantial ground for relief available to the movant, counsel may move to withdraw.  The motion shall explain the factual and legal basis for counsel's opinion and shall give notice that the movant may file a response to the motion within 30 days of service of the motion upon the movant.

19.   In the motion to withdraw, Defendant's Rule 61 counsel represented that, after undertaking a thorough analysis of the Defendant's claims, counsel has determined that the claims are so lacking in merit that counsel cannot ethically advocate any of them.[17] Counsel further represented that, following a thorough review of the record, counsel was not aware of any other substantial claim for relief available to Defendant Rodriguez.[18] Defendant's Rule 61 counsel represented to the court that there are no potential meritorious grounds on which to base a Rule 61 motion and has therefore sought to withdraw as counsel.[19]

20.   In response to Rule 61 counsels' motion to withdraw, Defendant filed an "amended Rule 61 motion" asserting for the first time a claim of actual innocence and

---

[16] Superior Court Criminal Rule 61(e) was amended effective June 4, 2014.  After June 4, 2014, Superior Court Criminal Rule 61(e)(2) is now set forth at Superior Court Criminal Rule 61(e)(6).
[17] See, Superior Court Docket No. 65- Defendant's Rule 61 counsel's Motion to Withdraw along with the accompanying Memorandum in Support of Motion to Withdraw.
[18] *Id.*
[19] *Id.*

5

claiming that he only took a plea because he was assaulted and threatened with bodily harm by another inmate.[20]

21.     By letter dated January 25, 2015, Rule 61 counsel requested that their motion to withdraw as counsel be stayed so as to allow them the opportunity to investigate Defendant's new claim.[21] By Order dated February 6, 2015, counsels' request was granted.  The motion to withdraw was stayed and Rule 61 counsel investigated Defendant's new claim.[22]

22.     In the investigation of Defendant's new claim, Rule 61 counsel represented that they obtained specifics of the claim from Defendant.  Defendant responded that he was attacked by a person he knows as Ray, who is related to the victim.  According to Defendant, the threat from Ray was that if he "wasn't punished by the courts or did not except [sic] a plea, that [Ray] would do everything in his power to kill [Defendant] and that if [Defendant] was not accessible then harm would come to [Defendant's] family."[23]

23.     Upon obtaining the specifics of the claim, Rule 61 counsel subpoenaed records from the Department of Corrections.  According to the incident report, there was an incident on January 11, 2012, in which Defendant was assaulted by Richard Ray.  Defendant was injured.[24]  After the incident, Defendant requested a transfer to administrative segregation.  At the time of the incident, the reason stated by Defendant in his request for a transfer was that: "I feel as if my life is at danger because he told me he

---

[20] January 12, 2015 court submission by Defendant, Superior Court Docket No. 69.

[21] Superior Court Docket No. 70.

[22] Superior Court Docket No. 71.

[23] Superior Court Docket No. 77,  Rule 61 counsel's May 22, 2015 submission to the court, at pg. 1; See also, Exhibit C to the May 22, 2015 submission.

[24] Superior Court Docket No. 77,  Rule 61 counsel's May 22, 2015 submission to the court, at pgs. 1-2; See also, Exhibit D to the May 22, 2015 submission.

was going to shank me next time and that if I didn't leave the pod it was going to happen every day until I did get moved."[25]

24. In Defendant's contemporaneous request, at the time the incident occurred, Defendant makes no mention of being threatened to take a plea or get punished by the courts. The attack seemed motivated by Mr. Ray's desire to get Defendant off his pod.[26]

25. Moreover, it is important to emphasize that this incident occurred on January 11, 2012, and the issue of a possible plea offer was not even raised until after the pre-trial conference on June 5, 2013, on the eve of trial, over one year and almost six months after the incident. It is also important to point out that Defendant did not initiate the possibility of a plea offer and, as later discussed, gave the plea offer much thought and consideration after extensive discussions of the offer with his counsel, before agreeing to accept the plea.

26. It is also important to note that the first time Defendant even raised the voluntariness of his plea based on the alleged threat was not on direct appeal, not in his motion for reduction of sentence filed in October 2013, not in his initial Rule 61 motion filed in February 2014, but on January 7, 2015, in response to his Rule 61 counsels' motion to withdraw as counsel. The first time Defendant raised this issue was about three years after the alleged incident took place.

27. Defendant's Rule 61 counsel concluded that although an incident did occur, it could not be sufficiently corroborated that the purpose of the attack was to force Defendant to take a plea. Moreover, Defendant's Rule 61 counsel concluded that

---

[25] Superior Court Docket No. 77, Rule 61 counsel's May 22, 2015 submission to the court, at pg. 2; See also, Exhibit E to the May 22, 2015 submission.
[26] See, Superior Court Docket No. 77, Rule 61 counsel's May 22, 2015 submission to the court, at pg. 2; See also, Exhibit E to the May 22, 2015 submission.

Defendant's representations at the plea colloquy further reveal that Defendant's plea was voluntary.[27]

28. Defendant's Rule 61 counsel advised the court that after investigating Defendant's new claim, they had decided that such claim lacks merit and they continue to stand by their motion to withdraw.[28]

29. In order to evaluate Defendant's Rule 61 motion and to determine whether Defendant's Rule 61 counsels' motion to withdraw should be granted, the court should be satisfied that Rule 61 counsel made a conscientious examination of the record and the law for claims that could arguable support Defendant's Rule 61 motion. In addition, the court should conduct its own review of the record in order to determine whether Defendant's Rule 61 motion is so totally devoid of any, at least, arguable postconviction claims.[29]

## DEFENDANT'S RULE 61 MOTION

30. The claims raised in the subject motion are procedurally barred, waived and without merit.

### A) Procedural Bars Preclude Consideration of Defendant's Claims

31. Prior to addressing the substantive merits of any claim for postconviction relief, the Court must first determine whether the defendant has met the procedural requirements of Superior Court Criminal Rule 61.[30] If a procedural bar exists, then the claim is barred, and the Court should not consider the merits of the postconviction claim.[31]

---

[27] Superior Court Docket No. 77, Rule 61 counsel's May 22, 2015 submission to the court, at pg. 2.
[28] Superior Court Docket No. 77, Rule 61 counsel's May 22, 2015 submission to the court, at pg. 2.
[29] See, for example, *Roth v. State of Delaware,* 2013 WL 5918509, at *1 (Del. 2013)(discussing standard to be employed when deciding counsel's motion to withdraw on a defendant's direct appeal.).
[30] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[31] *Id.*

32.     Rule 61 (i), in effect at the time Defendant filed his Rule 61 motion, imposed four procedural imperatives.[32] Rule 61(i) required that: (1) the motion must be filed within one year of a final order of conviction;[33] (2) any basis for relief must have been asserted previously in a prior postconviction proceeding; (3) any basis for relief must have been asserted at trial or on direct appeal as required by the court rules unless the movant shows prejudice to his rights or cause for relief; and (4) any basis for relief must not have been formally adjudicated in any proceeding. The bars to relief under (1), (2), and (3), however, do not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction.[34] Moreover, the procedural bars of (2) and (4) may be overcome if "reconsideration of the claim is warranted in the interest of justice."[35]

33.     In accordance with the procedural mandates, Rule 61(i)(4) precludes the court's consideration of Defendant's claim that his counsel provided ineffective assistance in the handling of Defendant's plea, since he already raised this claim in some fashion in his prior motion for reduction/modification of sentence. In Defendant's motion for reduction/modification of sentence he claimed that due to his counsel's ineffectiveness he was not properly advised as to the outcome and sentence of the plea. In the subject motion, Defendant again contends that he was not properly advised as to the State's plea

---

[32] Rule 61(i) was revised effective June 4, 2014. Defendant filed his motion on February 14, 2014, before the effective date of the revisions.

[33] If a final order of conviction occurred on or after July 1, 2005, the motion must be filed within one year. See, Super.Ct.Crim.R. 61(i)(1)(July 1, 2005).

[34] Super.Ct.Crim.R. 61(i)(5) (pre-June 4, 2014).

[35] Super.Ct.Crim.R. 61(i)(4) (pre-June 4, 2014).

offer. This claim is procedurally barred pursuant to Rule 61(i)(4), since it was previously adjudicated. The Superior Court already considered and denied Defendant's ineffective assistance of counsel claim. It is now procedurally barred as previously adjudicated.

34. To the extent that Defendant has restated or refined this claim, the Superior Court is not required to re-examine any claim that has received "substantive resolution" at an earlier time simply because the claim is now refined or restated.[36]

35. Turning now to Defendant's new claim in response to his Rule 61 counsels' motion to withdraw, that his plea was not voluntary because he was threatened, this claim is procedurally barred by Rule 61(i)(2) & (3). Defendant's was required to, but failed to, raise this claim on direct appeal. Defendant was required to raise any claim, with the exception of his ineffective assistance of counsel claim, on direct appeal.[37]

36. Defendant's claim that his plea was not voluntary was required to be raised on direct appeal to be procedurally preserved. Nothing prevented Defendant from raising this claim on direct appeal. Defendant was aware of, had time to, and the opportunity to raise this claim on direct appeal, but failed to do so. It is now procedurally barred by Rules 61(i)(2) and (3).[38]

### B) Defendant Waived His Claims Upon Entry of His Plea

37. In addition to Defendant's claims being procedurally barred, Defendant's claims were also waived upon the entry of Defendant's guilty plea.

---

[36] *Johnson v. State,* 1992 WL 183069, *1 (Del.).
[37] See, *Malin v. State,* 2009 WL 537060, at *5 (Del.Super. 2009); *Desmond v. State,* 654 A.2d 821, 829 (Del. 1994).
[38] Super.Ct.Crim.R. 61(i), as revised effective June 4, 2014, would still operate to preclude the same claims procedurally barred under the former rule.

10

38.     A defendant is bound by his answers on the plea form and by his testimony at the plea colloquy in the absence of clear and convincing evidence to the contrary.[39]  In this case, the Truth-in-Sentencing Guilty Plea Form, Plea Agreement and plea colloquy reveal that Defendant knowingly, voluntarily and intelligently entered a guilty plea to the charges for which he was sentenced.

39.     At the plea colloquy, the parties described the plea negotiations.[40]  The plea negotiations began on or about June 5, 2013.  Defense counsel represented to the court that discussions with Defendant had lead to acceptance of the plea agreement, given the likely result of trial and the need to accept responsibility in order to receive a favorable sentence.[41]  Defense counsel further explained that he had two conversations with Defendant regarding the decision as to whether or not to accept the plea offer.[42]  The first conversation was lengthy.  After their discussion about the plea offer, Defendant wanted to give the decision serious consideration and expressed a desire to have some time to think about it.[43]

40.     The second conversation took place on June 12, 2013 (the day before Defendant accepted the plea).  Defense counsel, once again, discussed the possibilities at trial, the ramifications of a plea offer versus counsel's opinion of the likely outcome at trial, and how acceptance of responsibility would favorably impact sentencing proceedings in the event of a plea.[44]

---

[39] *State v. Harden,* 1998 WL 735879, *5 (Del. Super.); *State v. Stuart,* 2008 WL 4868658, *3 (Del. Super. 2008).
[40] June 13, 2013 Plea Transcript, at pgs. 2-4.
[41] June 13, 2013 Plea Transcript, at pgs. 3-4.
[42] *Id.*
[43] *Id.*
[44] *Id.*

41.     Defense counsel also discussed the potential penalties that Defendant would be facing if he accepted the plea offer. Defense counsel discussed the various trial rights that Defendant would be waiving by pleading guilty and discussed the disabilities that would accrue to a convicted felon. Defense counsel represented to the court that after their lengthy and thorough discussions, he believed that Defendant understand all the parameters of the plea offer and was accepting the plea knowingly, voluntarily and intelligently.[45]

42.     Defendant then personally represented to the court that he had read the truth-in sentencing guilty plea form and the plea agreement. Defendant represented that he had discussed these forms with his counsel.[46] Defendant represented that nobody was forcing him to enter his plea.[47] Defendant represented that he was freely and voluntarily pleading guilty to the charges listed in the plea agreement. Defendant represented that he was not being threatened or forced to do so by his attorney, by the State, or by anyone else.[48]

43.     In the Truth-in-Sentencing Guilty Plea Form and during his plea colloquy, Defendant represented that he understood that by pleading guilty he was waiving his constitutional rights: to have a trial; to be presumed innocent until the State proves each and every part of the charges against him beyond a reasonable doubt; to a trial by jury; to cross-examine witnesses against him; to present evidence in his defense; to testify or not testify; and to appeal, if convicted.[49] Defendant also represented that he understood that

---

[45] *Id.*
[46] June 13, 2013  Plea Transcript, at pg. 4.
[47] Truth-in-Sentencing Guilty Plea Form dated June 13, 2013.
[48] Truth-In-Sentencing Guilty Plea Form dated June 13, 2013.
[49] June 13, 2013 Plea Transcript, at pgs. 5-6; Truth-in-Sentencing Guilty Plea Form dated June 13, 2013.

as a convicted felon he was losing his right to vote, to be a juror, to hold public office and to own a gun or any other deadly weapon, including knives.[50]

44.     Defendant represented that his counsel had fully advised him of his rights, that he understood the consequences of entering into his guilty plea, and that he was satisfied with his counsel's representation.[51]

45.     Defendant represented to the court that he understood that he could be sentenced up to 50 years in prison on the charges for he was pleading guilty and that nobody promised him what his sentence would be.[52]

46.     Defendant also admitted his guilt as to both charges for which he pled guilty.[53] Only after finding that Defendant's plea was entered into knowingly, intelligently and voluntarily, did the court accept the plea.[54]

47.     Defendant has not presented any clear, contrary evidence to call into question his prior testimony at the plea colloquy, Plea Agreement or answers on the Truth-In Sentencing Guilty Plea Form.  As confirmed by the plea colloquy, Plea Agreement and the Truth-In Sentencing Guilty Plea Form, Defendant entered his plea knowingly, intelligently and voluntarily.

48.     Since Defendant's plea was entered into voluntarily, intelligently and knowingly, Defendant waived his right to challenge any alleged errors or defects occurring prior to the entry of his plea, even those of constitutional proportions.[55]

---

[50] *Id.*
[51] Truth-In Sentencing Guilty Plea Form dated  June 13, 2013; June 13, 2013 Plea Transcript, at pgs. 4-5.
[52] June 13, 2013 Plea Transcript, at pg. 5.
[53] June 13, 2013  Plea Transcript, at pg. 6.
[54] June 13, 2013  Plea Transcript, at pg. 6.
[55] *Somerville v. State,* 703 A.2d 629, 632 (Del. 1997); *Modjica v. State,* 2009 WL 2426675 (Del. 2009); *Miller v. State,* 840 A.2d 1229, 1232 (Del. 2004).

49. The claims that Defendant seeks to raise in his Rule 61 motion were waived when Defendant voluntarily entered his plea. Indeed, both of Defendant's claims, the claim alleging ineffective assistance of counsel at the plea stage and the claim alleging that his plea was not entered into voluntarily, stem from allegations of defects, errors, misconduct and deficiencies which occurred prior to the entry of the plea, and were both waived when Defendant knowingly, freely and intelligently entered his plea.

### C) Defendant's Claims Are Without Merit

50. In addition to Defendant's claims being procedurally barred and waived, the claims are also without merit.

51. Defendant claimed that his counsel was ineffective by giving him substandard advice as to the plea offer and failing to advise him adequately as to his right to trial and the State's offer.

52. In order to prevail on an ineffective assistance of counsel claim in the context of a plea challenge, it is not sufficient for the defendant to simply claim that his counsel was deficient. The Defendant must also establish that counsel's actions were so prejudicial that there was a reasonable probability that, but for counsel's deficiencies, the defendant would not have taken a plea but would have insisted on going to trial.[56] Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[57]

---

[56] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Somerville v. State,* 703 A.2d 629, 631 (Del. 1997); *Premo v. Moore,* 131 S.Ct. 733, 739-744 (2011).
[57] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

53. The United States Supreme Court has reiterated the high bar that must be surmounted to prevail on an ineffective assistance of counsel claim.[58] The United States Supreme Court cautioned that in reviewing ineffective assistance of counsel claims in the context of a plea bargain, the court must be mindful of the fact that "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks."[59]

54. Defendant's claim of ineffective assistance of counsel is without merit. Defendant has not established that his counsel was deficient in any regard nor has he established that he suffered any actual prejudice as a result thereof.

55. Defendant claim in the subject motion is directly at odds with the representations Defendant made to the court at the time he accepted his plea. Indeed, at the time that Defendant accepted the plea, Defendant represented, *inter alia,* that nobody was forcing him to enter his plea, that he was aware that he was giving up his trial rights, and that he understood he could be sentenced to up to 50 years incarceration. In addition, Defendant represented that he was satisfied with his counsel's representation, that his counsel fully advised him of his rights, and that he understood the consequences of entering into his guilty plea.

56. Defendant's trial counsel had two discussions with Defendant regarding the decision as to whether or not to plead guilty. During those discussions, defense counsel discussed the strength of the State's case, the possibilities and risks at trial, the ramifications of a plea offer versus the likely outcome at trial, the consequences of accepting a plea, and the trial rights that would be waived if Defendant accepted the plea.

---

[58] *Premo v Moore,* 131 S.Ct. 733, 739-744 (2011).
[59] *Id.*, at pg. 741.

15

57.     Defendant confirmed on the Truth-in-Sentencing Guilty Plea Form that he was waiving enumerated trial rights. The form also confirmed that counsel had fully advised him of his trial rights, that he had discussed the form with counsel, and that he was satisfied with his counsel's representation.

58.     As previously discussed, a defendant is bound by his answers on the plea form and by his testimony at the plea colloquy in the absence of clear and convincing evidence to the contrary.[60] Defendant has not presented any clear, contrary evidence to call into question his prior testimony at the plea colloquy or answers on the Truth-In Sentencing Guilty Plea Form. Defendant's claim that his counsel provided him with ineffective assistance during the plea negotiations is not supported by the record and is without merit.

59.     Turning to Defendant's second claim, that his plea was not voluntary because he was threatened, this claim is also directly at odds with the representations Defendant made to the court at the time he accepted his plea.

60.     At the time that Defendant accepted the plea, Defendant represented at the plea colloquy or answers on the Truth-In-Sentencing Guilty Plea From that nobody was forcing him to enter his plea, that he was not being threatened or forced to enter his guilty plea by his attorney, by the State, or by anyone else.

61.     Defendant did not raise this claim until almost three years after the incident with Richard Ray occurred. At the time of the incident, Defendant reported that Richard Ray wanted Defendant off his pod and that Ray threatened to attack Defendant every day until

---

[60] *State v. Harden,* 1998 WL 735879, *5 (Del. Super.); *State v. Stuart,* 2008 WL 4868658, *3 (Del. Super. 2008).

16

he was moved off the pod.  Defendant never claimed that the incident had anything to do with Richard Ray's desire to have Defendant take a plea.

62.     Neither Defendant's words (his report contemporaneous with the incident) nor Defendant's actions at the time of the incident support Defendant's present claim that he was threatened to take a plea.  The incident occurred on January 11, 2012, and following the incident, Defendant never sought to take a plea.  The first time plea discussions were initiated was following the pre-trial conference on June 5, 2013, over one year and five months after the incident took place.   The plea discussions were not initiated by Defendant.  In fact, Defendant was hesitant to accept a plea and only did so after lengthy and thorough discussions with his counsel fully discussing the parameters of the plea. Defendant never alleged he was threatened to take a plea at the time of the incident (January 11, 2012), nor at the time of the plea negotiations and resulting plea (June 2013), nor on direct appeal, nor in his motion for modification of sentence (October 2013), nor in his initial Rule 61 motion (February 2014).

63.     There is nothing in the record to support Defendant's new claim, let alone clear, contrary evidence to call into question Defendant's prior testimony at his plea colloquy and in his answers on the Truth-in-Sentencing Guilty Plea Form.  Defendant entered into the plea knowingly, voluntarily and intelligently.   Defendant is bound by his representations to the court during the plea colloquy and in his answers on the Truth-in-Sentencing Guilty Plea Form. This claim is without merit.

64.     As discussed above, Defendant's guilty plea was knowingly, voluntarily and intelligently entered. Defendant cannot now seek to contest the alleged shortcomings of his counsel during the pre-trial and plea process or the voluntariness of his plea.

Defendant's claims were waived when he knowingly, voluntarily and intelligently accepted the plea offer. Defendant's claims are without merit.

65.     The court has reviewed the record carefully and has concluded that Defendant's Rule 61 motion is without merit and devoid of any other substantial claims for relief. The court is also satisfied that Defendant's Rule 61 counsel made a conscientious effort to examine the record and the law and has properly determined that Defendant does not have a meritorious claim to be raised in his Rule 61 motion.

For all of the foregoing reasons, Defendant's Motion for Postconviction Relief should be denied and Defendant's counsels' motion to withdraw should be granted.

**IT IS SO RECOMMENDED.**

_____/s/_____
Commissioner Lynne M. Parker

oc:  Prothonotary
cc:  Mr. Jonatan Rodriguez

18